Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

**Mohammed Sharique Shaikh**

   Plaintiff

v.         Case no: 6:10-CV-1032-ORL-18-GJK

1) Fannie Mae,
2) David Stern,
3) Greg Dreilinger,
4) Robyn Katz,
5) Citimortgage Inc.,
6) The Continental Group Inc.,
7) First Service Residential Management Inc.
8) Law Offices of David J. Stern, PA (aka Law Office)
   DEFENDANTS

**Complaint for torts of violation of constitutional rights, violation of Protecting Tenants at Foreclosure Act, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, abuse of process, breach of contract, violation of civil rights, fraud, conspiracy and other torts.**

## JURY TRIAL DEMANDED

**Introduction:** *The plaintiff, Mohammed Sharique Shaikh was subject to the above listed torts by the above defendants when they illegally attempted to evict Plaintiff. The Defendants engaged in the process of violating the Plaintiff's Civil and Legal Rights by illegally attempting to evict him.* To protect tenants from abrupt displacement, Congress unambiguously created federal rights in the PTFA to benefit tenants in foreclosed properties. Because these PTFA rights are consistent with the underlying statutory purpose and are not traditionally relegated to state law, they are enforceable through a private right of action.

  "Private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Private rights of action may be express or implied. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1231 (9th Cir. 2008). When, as here, a federal statute does not expressly provide a private right of action, courts turn to the four-part test set forth in *Cort v. Ash*, 422 U.S. 66 (1975), to determine whether a statute implies a right of action:

> (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted—that is, [whether] the statute create[s] a federal right in favor of the plaintiff"; (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to

Date: 9/2/2010 COMPLAINT AND JURY TRIAL DEMAND for case: 6:10-CV-1032-ORL-18-GJK Page 1 of 14

Case 6:10-cv-01032-JA-GJK Document 24 Filed 09/03/10 Page 2 of 14 PageID 133

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

deny one"; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff"; and (4) whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law."

Digimarc Corp., 549 F.3d at 1231 (quoting Cort, 422 U.S. at 78). An analysis under Cort is "focused entirely on intent." Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007). "Indeed, the three Cort factors not explicitly focused on legislative intent are actually indicia of legislative intent." Id.

Application of these factors to the PTFA sufficiently demonstrates an implied right of action.[1]

## A. Congress Created the PTFA's Federal Rights to Benefit Tenants Living in Foreclosed Properties

The first Cort factor asks whether the plaintiff is "one of the class for whose especial benefit the statute was enacted—that is, [whether] the statute create[s] a federal right in favor of the plaintiff." Digimarc Corp., 549 F.3d at 1231. This factor "is satisfied when there is an explicit reference to the individuals for whose benefit the statute was enacted." First Pacific Bancorp Inc. v. Helfer, 224 F.3d 1117, 1123 (9th Cir. 2000); see also Cannon v. Univ. of Chicago, 441 U.S. 677, 690-91 (1979) (when the statutory language expressly identifies the class of people Congress intended to benefit, it tends to favor a private right of action).

The PTFA is clearly aimed at protecting tenants, as demonstrated both by its title and the substantive rights it establishes. Indeed, the plain language of the title of the Act makes clear that tenants affected by foreclosure are the intended beneficiaries of the statute – the Act is called the "Protecting Tenants at Foreclosure Act of 2009." PTFA § 701. To that end, the PTFA grants bona fide tenants two explicit rights. The first is the right to a 90-day notice to vacate before they may be subject to an eviction. PTFA § 702(a)

---

[1] In this case, the District Court dismissed for lack of subject matter jurisdiction. However, "the existence of a private right of action is not a jurisdictional question." Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1085 (9th Cir. 2006) (citing Burks v. Lasker, 441 U.S. 471, 476 n.5 (1979)). Since jurisdiction clearly exists to determine the existence of a possible federal claim, the right of action issue is appropriately analyzed as such under Rule 12(b)(6). Arroyo-Torres v. Ponce Fed. Bank, F.B.S., 918 F.2d 276, 280 (1st Cir. 1990).

Case 6:10-cv-01032-JA-GJK  Document 24  Filed 09/03/10  Page 3 of 14 PageID 134

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

("any immediate successor in interest . . . pursuant to [a] foreclosure shall assume such interest subject to . . . the provision . . . of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice").

In addition, the PTFA creates continued occupancy rights for bona fide tenants. PTFA § 702(a)(2). Indeed, the PTFA provides that "any immediate successor in interest . . . pursuant to [a] foreclosure shall assume such interest subject to . . . the rights of any bona fide tenant to occupy the premises until the end of the remaining term of the lease," thus giving tenants additional rights, including the right to remain until the end of a fixed term lease, as well as rights granted under a lease or by landlord-tenant law, which otherwise would generally have been terminated by foreclosure of any superior mortgage or deed of trust. PTFA § 702(a)(2)(A). Absent local law, these rights to notice and continued occupancy after foreclosure did not exist prior to PTFA. *See* p. 1, *supra*. These PTFA rights were explicitly enacted for the benefit of bona fide tenants whose homes are the subject of foreclosure, thus fully satisfying the first *Cort* factor. *See Nativi v. Deutsche Bank Nat'l Trust Co.*, No. 09-06096, 2010 WL 2179885, at *3 (N.D. Cal. May 26, 2010) (the PTFA intended to especially benefit tenants who fell victims to the foreclosure crisis).

## B. Congress Intended to Create a Private Remedy to Implement the Rights Created By PTFA

The second *Cort* factor focuses on whether there is "any indication of legislative intent, explicit or implicit, [ ] to create such a remedy or deny one." *Cort*, 422 U.S. at 78. Of the four *Cort* factors, this factor is the most important. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004). To determine the legislative intent to create a private right of action, courts examine the rights-creating language of the statute, the context in which it was passed, and the statute's legislative history. *Id.* at 836.

It is clear that the absence of an express legislative intent to create a private remedy does not mean that Congress did not intend such a right. *Opera Plaza*, 376 F.3d at 836 ("Legislative silence does not necessarily equate to the absence of intent to create a private right of action"). "Indeed, if that were the case, the Supreme Court would not have developed a test for an implied private right of action." *Helfer*, 224 F.3d at 1124. Instead, the Supreme Court has instructed that:

> Our focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action. The implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 4 of 14 PageID 135

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

> when Congress simply forgot to codify its evident intention to provide a cause of action.

*Thompson v. Thompson*, 484 U.S. 174, 179 (1988).

### 1. The PTFA's Statutory Text and Legislative History Demonstrates Congressional Intent to Create an Enforceable Right

Every question of statutory interpretation "begins with the statutory text." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). As set forth fully above, the PTFA starts with an unmistakable focus on tenants' rights, as it is titled *"Protecting Tenants* at Foreclosure Act," and then proceeds to establish critical housing rights for tenants at foreclosure . PTFA §§ 701, 702(a) (emphasis added).

Congress's exclusive focus on tenants' rights in the plain language of the PTFA is also borne out in the legislative history. Statements in the Congressional Record forcefully repeated the necessity to create a new law to protect tenants. *See* 155 Cong. Rec. S5096 (daily ed. May 5, 2009) (statement of Sen. Gillibrand) ("tenants have almost no rights when a bank seizes their home...[and] as the housing crisis becomes more and more widespread, we need to make sure we are not just helping homeowners stay in their homes but also helping the thousands of tenants who are hit just as hard or even worse as a result of the crisis"); *id.* at S5110 (statement of Sen. Kerry) ("Congress has done very little to help renters who have been paying their rent regularly on time but, unfortunately, they have landlords who are losing their property to foreclosure. So these renters are absolutely blameless victims in the foreclosure catastrophe that has hit the country"); *id.* at S5174 (daily ed. May 6, 2009) (statement of Sen. Kerry) ("What we want to do is provide them with a provision where they will have [at least] 90 days...We are protecting legitimate, low- to moderate-income folks in America who do not get protections otherwise from being just booted out on the street, which is literally what has happened in the absence of this protection").

Moreover, Congress intended tenants to have an enforceable right to remedy the "disgraceful" incidents that are happening around the country. As Senator Kerry described,

> A landlord should not be allowed to come in, change the locks, and force out tenants who were there completely legitimately, with an expectation that they were coming home to their same old home...A Dorchester, MA, man returned to the home he had been renting for the past 4 years. He found that the locks had been changed and a foreclosure notice had been placed on the door...When the police arrived, he had to beg them not to be arrested.
>
> In early January, a 45-year-old former factory worker from China came home to her third-floor walkup in east Boston to find a crew of moving men removing all of her furniture. She thought

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 5 of 14 PageID 136

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

> she was being robbed. She didn't speak English...She ended up on the street with all of her possessions...

155 Cong. Rec. S5110-5111 (daily ed. May 5, 2009) (statement of Sen. Kerry). Indeed, Senator Kerry describes situations in which tenants living in foreclosed properties were not even being brought into eviction court where they could present a defense or ask the court for more time. *Id.* Based on the PTFA's sole focus on tenants – both in its explicit text creating federal tenants' rights and its legislative history, the second *Cort* factor also demonstrates that Congress intended to create a private judicial remedy to enforce the PTFA.

## 2. The PTFA Provides No Alternative Means of Enforcement

The PTFA's lack of any comprehensive agency enforcement scheme provides yet another sign that Congress intended tenants to have a private right of action under the statute. Although "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others," *Sandoval*, 532 U.S. at 290, the lack of an express enforcement mechanism suggests that Congress intended the statute to be privately enforceable. *Compare Helfer*, 224 F.3d at 1125-26 (concluding that "where no enforcement mechanism is explicitly provided by Congress or an administrative agency, it is appropriate to infer that Congress did not intend to enact unenforceable requirements"), *with Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1024 (9th Cir. 2007) (finding that the fact that Congress established a carefully tailored administrative scheme of enforcement undermined the suggestion that Congress intended to create a private right of action). Where Congress has specified a comprehensive governmental enforcement scheme, plaintiffs can obtain redress for violations of their federal rights. But when Congress creates a federal right without any alternative enforcement authority, a private right of action should be implied. *See Helfer*, 224 F.3d at 1125-26 (explaining that Congress would not have created a statutory right without an expectation that the right would be enforceable). Here, no federal agency has been tasked with enforcing the individual rights of tenants under the PTFA, no federal enforcement scheme exists, and no existing mechanism would protect all the tenant rights created by the PTFA.

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 6 of 14 PageID 137

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

Indeed, defending state eviction actions alone would not be adequate to enforce the PTFA. First, as Senator Kerry's May 5, 2009 statements indicate, many of the worst situations facing tenants at foreclosure involve skirting a state court eviction process altogether, and practices such as lockouts after foreclosure have not subsided after PTFA's enactment. *See Nativi*, 2010 WL 2179885, at *1 (describing tenants who were locked out of their homes without an eviction or court order). Likewise, the rights created by the PTFA go beyond mere eviction defenses – they provide bona fide tenants with any rights that had been theirs under their leases with the prior owner, as well as continued occupancy rights for at least 90 days following a PTFA-required notice. Many of these rights cannot be raised as a counterclaim in an unlawful detainer case. *See Knowles v. Robinson*, 387 P.2d 833, 836 (Cal. 1963) ("neither a cross-complaint nor a counterclaim may be properly filed in a suit for unlawful detention of property"). What's more, waiting to raise the PTFA in eviction court – even if the tenant prevails – may put tenants' future housing opportunities in jeopardy. *See* Rudy Kleysteuber, *Tenant Screening Thirty Years Later: A Statutory Proposal to Protect Public Records*, 116 Yale L.J. 1344, 1346 (2007) (explaining that landlords routinely purchase "tenant screening reports" when evaluating prospective tenants that "chronicle landlord-tenant disputes and court filings, often regardless of their outcomes," making it difficult for even prevailing tenants to secure housing). Only the availability of a private right of action ensures that tenants can choose the best available remedy to fully enforce the individual rights provided by the PTFA. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18-19 (1979) (finding that Congress intended to create a private right of action, in part, because seeking relief under the statute in the context of state court litigation or as a defense was inadequate to effectuate Congressional purpose).

### C. A Private Right of Action is Consistent with the Underlying Purpose of the Law

The purpose of the PTFA is evident from the legislative history: to protect tenants from the devastating effects of foreclosure. A private right of action is consistent with that goal. *See, e.g., Cannon*, 441 U.S. at 693 (holding that a private right of action for damages under Title IX would not frustrate the statutory purpose to ensure federal funds are not used to support discrimination). Moreover, because the PTFA does not identify

any enforcement entity to sue violators on behalf of tenants, allowing tenants "a private right of action is consistent with the goals of the Act," as "it is appropriate to infer that Congress did not intend to enact unenforceable requirements." *Helfer*, 224 F.3d at 1127 (holding that shareholders had a private right of action against defendant bank to demand a satisfactory accounting). A private right of action is critical to advance Congress's goals under the PTFA.

### D.     The Cause of Action is Not One Traditionally Relegated to State Law

As with all the factors, the fourth factor of the *Cort* test, whether the cause of action is one traditionally relegated to state law, is a means to examine Congressional intent. *Orkin*, 487 F.3d at 739. Both the literal text and the legislative history of the PTFA demonstrate that Congress has established a federal policy to address to a nationwide crisis – notwithstanding its explicit displacement of traditional state law. Certainly, since the almost unprecedented financial and housing crises began, Congress has determined it necessary to adopt a wide range of remedial policies in areas that have traditionally been left to the states. *See, e.g.,* Dodd-Frank Wall-Street Reform and Consumer Protection Act, Pub. L. No. 111-203 (creating an array of new protections in the area of consumer protection, mortgage lending, and banking, including establishing a new federal consumer protection agency). Foreclosure is no exception. While post-foreclosure possessory rights may have traditionally been an area regulated by the states, the federal government has been squarely at the centre of attempts to address the foreclosure crisis. Indeed, in similar situations, courts have found a private right of action even when an area traditionally regulated by the states has been involved. *See, e.g., Pryor v. U.S. Steel Corp.*, 794 F.2d 52, 58 (2d Cir. 1986) ("[h]ere . . . U.S. Steel is alleged to have violated a specific substantive provision of the Williams Act by failing to purchase shares on a pro rata basis. Under these circumstances, we are not intruding unnecessarily into the province of state contract law by recognizing a federal private remedy to enforce a requirement of a federal statute"); *Zeffiro v. First Pa. Banking & Trust Co.*, 473 F. Supp. 201, 210 (E.D. Pa. 1979) (determining that that the fourth *Cort* factor was satisfied because, while issue before the court (trust indentures) may have be traditionally been the primary concern of states, increased federal legislation and regulation in the area changed that). The federal government has a strong

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 8 of 14 PageID 139

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

interest in protecting the hidden casualties of the foreclosure crisis and stabilizing communities affected by foreclosure. This interest only buttresses the conclusion of the language, structure, and legislative history of the PTFA – Congress intended to create a private right of action.

## CONCLUSION

For the reasons stated above, it is obvious that Congress did intend to create a private right of action.

The Protecting Tenants at Foreclosure Act of 2009 states:
>   (a) In General- In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to--
>     (1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
>     (2) the rights of any bona fide tenant, as of the date of such notice of foreclosure--
>       (A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or
>       (B) without a lease or with a lease terminable at will under State law, subject to the receipt by the tenant of the 90 day notice under subsection (1),
>   except that nothing under this section shall affect the requirements for termination of any Federal- or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

Now comes the Plaintiff, Mohammed Shaikh, and for the complaint against the Defendants, states and alleges the following:

**Parties:**

1. Plaintiff is a natural person residing at 2323 Caravelle Circle, Kissimmee, FL since 2008.
2. Defendant Fannie Mae is a foreign corporation based out of Washington DC with offices in Florida, including one at **2671 NW 28th Street, Miami, FL 33142**
3. Defendant FIRST SERVICE RESIDENTIAL MANAGEMENT, INC. is a Florida Registered Corporation with offices at 1815 GRIFFIN RD, STE 404, DANIA BEACH FL 33004
4. Defendant Citimortgage Inc. is a foreign corporation whose agent for service of process is C T CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, Plantation, FL 33324.
5. Defendant The Continental Group Inc. is a Florida Corporation with offices at 2950 North 28th Terrace, Hollywood, FL 33020.
6. Defendant David James Stern is an attorney from the Law Offices of David J Stern PA.

Case 6:10-cv-01032-JA-GJK Document 24 Filed 09/03/10 Page 9 of 14 PageID 140

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

7. Defendant Law Offices of David J Stern PA is a Florida for profit corporation with offices at 900 S. PINE ISLAND ROAD #400, Plantation, Florida, 33324.

8. Defendant Robyn Katz is an attorney from the Law Offices of David J Stern PA.

9. Defendant Greg Dreilinger is an attorney from the Law Offices of David J Stern PA.

**Jurisdiction:**

10. This court has jurisdiction pursuant to 28 USC 1332 and 28 USC 1391(a)(2) as the Plaintiff has lived in it's jurisdiction for over 5 years and a majority of the torts associated with this action originated in and occurred in the jurisdiction of this Court and the matter in controversy exceeds the sum or value of $75000, exclusive of interests and costs.

11. The Defendants violated the Protecting Tenants at Foreclosure Act of 2009, as well as violated the Plaintiff's Constitutional rights under the 5th Amendment when they attempted to illegally evict him and a plaintiff may bring suit in federal court if his claim "arises under" federal law (28 U.S.C. § 1331. In that situation, the court has original jurisdiction.) The Plaintiff alleges violation of his constitutional rights, which is triable as violation of the Constitutional rights makes it a Federal matter.

12. The Defendants conspired to deprive the Plaintiff of his constitutionally guaranteed right to due process by attempting to illegally evict Plaintiff, as the constitution guarantees that nobody can be deprived of life, liberty or property without due process.

13. There is diversity of location amongst the Defendants, as Plaintiff is located in Florida, Defendants are based out of Florida, Missouri and Washington D.C.

14. The Defendants Citimortgage Inc. and Fannie Mae are foreign corporations who had hired the The Continental Group Inc., First Service Residential Management Inc. and Law Offices of David J. Stern, PA who committed torts against the Plaintiff in Orlando.

**Introduction:**

15. The Fifth Amendment of the US Constitution guarantees that due process shall be used before depriving an individual of life, liberty or property.

**Causes of action:**

16. **Violation of the Constitutionally guaranteed 5th Amendment Rights to not be deprived of property without due process:** The constitution guarantees that an individual shall not be deprived of property without due process. The defendants acted together to conspire to unlawfully deprive the plaintiff of his property rights, by circumventing the PTFA in violation of the victim's constitutional rights. Courts have traditionally resorted to remedies such as awarding damages for the torts of violation of constitutional rights.

17. Violation of the PTFA: In furtherance of the conspiracy, Defendants violated federal law Protecting Tenants at Foreclosure Act and filed false statements in court claiming the plaintiff's home was not tenant occupied even though they knew that it was in fact tenant occupied. Prior

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 10 of 14 PageID 141

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

to the PTFA, tenants in properties at foreclosure often found themselves at risk of homelessness or struggling with poor living conditions, often with few state or local laws to protect them. In 2009, Congress passed the Protecting Tenants at Foreclosure Act in order to stop this "rampage of sudden evictions of renters" caused by foreclosure and "help unsuspecting renters from falling victims to foreclosure in which they played absolutely no part." It also mandates that the tenant's rights under the tenancy or lease agreement – e.g., rental amount, the provision of certain utilities, property maintenance, etc. become binding on the successor-in-interest. PTFA § 702(a)(2)(A). In this way, the PTFA clearly and directly protects all aspects of tenants' housing from the jarring, and often devastating, effects of a foreclosure. To protect tenants from abrupt displacement, Congress unambiguously created federal rights in the PTFA to benefit tenants in foreclosed properties. Because these PTFA rights are consistent with the underlying statutory purpose and are not traditionally relegated to state law, they are enforceable through a private right of action. "Private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Private rights of action may be express or implied. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1231 (9th Cir. 2008). When, as here, a federal statute does not expressly provide a private right of action, courts turn to the four-part test set forth in *Cort v. Ash*, 422 U.S. 66 (1975), to determine whether a statute implies a right of action. An analysis under *Cort* is "focused entirely on intent." *Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007). "Indeed, the three *Cort* factors not explicitly focused on legislative intent are actually indicia of legislative intent." *Id*. Application of these factors to the PTFA sufficiently demonstrates an implied right of action. Additionally, Deutsche Bank is now being appealed to the Court of Appeals in the Ninth Circuit, and is not binding as a precedent on this circuit.

18. **Breach of implied covenant of good faith and fair dealing:** The Defendants deliberately violated the Protecting Tenants at Foreclosure Act even after they were advised in writing that the subject property was tenant occupied since 2008.
19. **Intentional infliction of emotional distress:** The Defendants intentionally inflicted emotional distress upon the Plaintiff when they fraudulently filed an eviction notice upon the Defendant despite being advised in writing on numerous occasions that Defendant had rights under the PTFA that needed to be protected.
20. **Breach of Contract:** The Defendants deliberately committed breach of contract when they failed to honour Plaintiff's existing real estate lease even though the PTFA specifically required landlords to do so. Common law, federal law and precedent cases have upheld that the landlord's obligations remain even when title passes to a new owner. The PTFA also allows the tenant to continue under the old lease. The Defendants deliberately breached a valid and

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 11 of 14 PageID 142

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

binding contract, when they failed to honour the old lease and compelled the Plaintiff to forego his security deposit of $5000 when they made him sign a new lease.

21. Fraud: The Defendants deliberately committed fraud by filing false statements with the court that the property inhabited by the tenant was not tenant occupied, even though they were advised in writing by mail and email that the property was tenant occupied.

22. Plaintiff has been a bona fide tenant at 2323 Caravelle Circle, Kissimmee, Florida since 2008.

23. In 2009, Congress passed a law Protecting Tenants at Foreclosure Act, that granted several rights to bona fide tenants of foreclosed properties including a 90 day notice period for eviction and the requirement that existing leases be honoured.

24. In December 2009 and January 2010, Plaintiff Mohammed Shaikh received letters from Law Offices of David J. Stern, PA stating that they were the attorneys for the mortgage lenders Citimortgage Inc. and the property was going to be foreclosed.

25. In response to these letters of December 2009 and January 2010, in January 2010 the Plaintiff mailed letters to the Law Office of David J. Stern, PA advising them that Plaintiff was a bona fide tenant since 2008 and was a protected tenant, and also sent along a copy of the lease to the Law Offices of David J. Stern, PA.

26. In March 2010, Plaintiff again wrote to Attorneys David J. Stern and Greg Dreilinger by email advising them in writing that he was bona fide tenant and he expected their firm and clients to honour his legal and civil rights by refraining from illegal conduct. See exhibit 1.

27. In May 2010, Plaintiff received a copy of communication by Attorney Robyn Katz to the Court, who is a colleague of David J. Stern and Greg Dreilinger, which stated that to her knowledge, the residential property located at 2323 Caravelle Circle, Kissimmee, FL 34746 was not occupied by tenants.

28. In March 2010 and May 2010, Plaintiff wrote to the Law Office and it's attorneys David James Stern, Greg Dreilinger and Robyn Katz to advise their client that the property was tenant occupied since 2008. Again Plaintiff sent a copy of the lease by mail to the attorneys.

29. In the last week of May 2010, Plaintiff received a notice from Jeff Perry who claimed to be an agent for the new owner of the property, Fannie Mae, asking Plaintiff to contact him.

30. On 5/30/2010, the Plaintiff wrote an email to Attorneys David Stern, Greg Dreilinger, Robyn Katz and Jeff Perry, who claimed to be Fannie Mae's Agent, advising them that their repeated statements to the court that the Plaintiff's home was not tenant occupied was false and would lead to litigation if it illegally deprived Plaintiff of his security deposit and his right to continue renting under his existing lease. Attorneys Katz, Stern and Dreilinger conspired to repeatedly mislead the court by actively concealing the fact that the property was occupied by a tenant.

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 12 of 14 PageID 143

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

31. On June 1st 2010, Plaintiff wrote an email to Judge Waller's Judicial Assistant advising her that the claims and statements made by the Law Office of David J. Stern, PA and the attorneys employed by the Law Office of David J Stern, PA were false as the attorneys already knew the property was tenant occupied, and that I wished to have my rights protected under the Protecting Tenants at Foreclosure Act of 2009.

32. On June 1st 2010, Attorney Robyn Katz from the Law Office wrote to Plaintiff advising him that she had forwarded Plaintiff's email to the Current Owner of the Property, Fannie Mae (known by the stock market symbol FNMA) for review. This proved that at least as of June 1st 2010, the new owner of the property FNMA was aware that the property was tenant occupied, and yet conspired with Attorneys Katz, Dreilinger and Stern to illegally evict the Plaintiff by deliberately concealing from the Court the fact that the property was tenant occupied.

33. On June 1st 2010, Plaintiff asked Attorney Robyn Katz via email why she lied to the court that the property wasn't tenant occupied, but received no reply. It is clear that the attorneys knew for months that the property was tenant occupied but concealed this from the Court and possibly the lenders in order to further their common goal of illegal eviction of the Plaintiff.

34. In June 2010, Ms. Stephens of the Continental Group Inc. contacted Plaintiff introducing herself as an agent for Fannie Mae, and started negotiations about renting the property.

35. Plaintiff asked Ms. Stephens about the question of earlier security deposit and was told that FNMA would not refund security deposit, and would not recognise the earlier lease.

36. In June 2010, Ms. Stephens advised Plaintiff that she had been promoted, and Plaintiff would now need to deal directly with her colleague George Alexander Gordon.

37. Mr. Gordon was advised by Plaintiff that Plaintiff was already in a valid lease, and would be a tenant under that lease till 2011. Defendant even provided a copy of his valid lease to Gordon.

38. Plaintiff asked Mr. Gordon to clarify what happened to Plaintiff's security deposit, as the landlord is legally obligated to return the security deposit upon termination of the lease.

39. Mr. Gordon told Plaintiff that FNMA would not agree to give Plaintiff his appliances as they were now fixtures, and would not refund the deposit either or honour the existing lease.

40. Plaintiff advised Mr. Gordon that in that case he'd simply continue under the existing lease and sue FNMA in court for violation of the law and Plaintiff's civil rights.

41. Mr. Gordon pressurised Plaintiff by ordering an eviction notice that disclaimed knowledge of the property being tenant occupied. This false claim was again made through Law Offices of David J. Stern and the eviction notice was posted on Plaintiff's door on 7/1/10.

42. When Plaintiff called Mr. Gordon to ask WHAT was going on, Mr. Gordon said FNMA wouldn't honour the existing lease and would evict Plaintiff claiming he wasn't a bona fide tenant at all.

Case 6:10-cv-01032-JA-GJK   Document 24   Filed 09/03/10   Page 13 of 14 PageID 144

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

43. Plaintiff told Mr. Gordon repeatedly that this was ILLEGAL, and Mr. Gordon just restated that FNMA's offer was either Plaintiff signed a new lease with them stating FNMA doesn't owe Plaintiff any security deposit and owned the appliances, or get evicted in less than 24 hours.

44. Facing imminent eviction, the Plaintiff was coerced to agree to the terms presented by FNMA and it's agents, on all issues including the rent, security deposit and appliances, and signed a new lease with FNMA to prevent eviction at such short notice in violation of the law.

45. Due to the illegal and unethical extortion and blackmail by the defendants, the Plaintiff suffered 2 panic attacks, extreme levels of stress and anxiety.

46. Plaintiff wrote an email to the defendants asking WHO acted in this illegal and ethical manner to evict Plaintiff and violate his rights, and demanded an apology, to which none of the Defendants accepted responsibility and apologised.

47. After researching on the Internet, the Plaintiff discovered that this wasn't the first time defendants had attempted to illegally evict tenants.

48. The defendants co-conspired to lie to the court that the property wasn't tenant occupied, and concealed from the court the fact that the property was actually tenant occupied since 2008.

49. The defendants actively sought to deprive Plaintiff of his constitutional right to due process as well as Plaintiff's rights under the PTFA of 2009 by falsely claiming in court that the property wasn't tenant occupied while knowing for months that there was a bona fide tenant occupant.

50. To avoid litigation, Plaintiff made a good faith request to Defendants to pay Plaintiff for the damages he suffered due to violation of his rights under the PTFA, violation of his constitutional rights, Intentional Infliction of Emotional Distress, and other torts but received no response to his claim.

51. The defendants failed to respond to Plaintiff's demand for restitution due to which the Plaintiff is now asking the court to compel the defendants to pay Plaintiff damages for the torts he has suffered as well as punitive damages as the Defendants deliberately and actively conspired to commit the torts listed above against the Plaintiff in an egregious and deliberate manner to deprive Plaintiff of his legal, constitutional and financial rights.

52. Under the doctrine of Respondeat Superior, the Employer is responsible for the actions of his agent where a valid agency or employment relationship had been created.

53. The law offices of David Stern, Continental Group Inc. and First Service Residential acted illegally and tortuously on behalf of Fannie Mae and Citigroup with the full knowledge and consent of Fannie Mae and Citigroup.

54. The Law Office of David J. Stern, PA and it's attorneys acted illegally and tortuously on behalf of Citimortgage Inc. and Fannie Mae to violate Plaintiff's civil rights, and coerced him to relinquish his legal right to his security deposit of USD 5000 by blackmailing him.

Mohammed Shaikh v. Fannie Mae, Greg Dreilinger, David Stern, Robyn Katz, et al.

### Torts that resulted in economic, mental and physical harm to the Plaintiff:

55. Plaintiff suffered 2 painful panic attacks due to the eviction notice that threatened plaintiff with imminent eviction by claiming falsely to the court that the property wasn't tenant occupied.
56. Due to the blackmail and extortion committed by the Defendants, the Plaintiff suffered from extreme levels of stress and anxiety when faced with imminent eviction based on fraud.

### PRAYER:

Wherefore Plaintiff prays for relief as follows:

57. Plaintiff demands compensatory damages of $2,090,000 from the Defendants for their torts.
58. Plaintiff Mohammed Shaikh demands punitive damages of $6,030,000 from the defendants for their acts of egregiously insidious violation of the law and Plaintiff's civil rights by deliberately lying to the court to deprive Plaintiff of his right to enjoy use of the rental property as his home.
59. Plaintiff demands that the Defendants be made to repay Plaintiff the security deposit of $5000.
60. Plaintiff demands that Defendants be made to contribute $200,000 each to the Legal Aid Society of the Orange County Bar Association to provide free legal representation for Foreclosure affected tenants in Osceola and Orange Counties.
61. Plaintiff demands that Defendants be required to take steps to ensure improved compliance with the applicable laws and rights of tenants to prevent a future attempt at illegal evictions.

By: *[signature]*

Mohammed Shaikh, MBA, CFE, Licensed RE Broker (CA)

2323 Caravelle Cir, Kissimmee, FL 34746 **Email:** sybasepro@yahoo.com **Phone:** 407 535 0616

### Demand for Jury Trial

Plaintiff hereby demands a jury trial of all issues in this action that can be tried as of right by a jury.

**Date:** 9/2/2010   **By:** *[signature]*, Mohammed Shaikh, MBA, CFE, Licensed RE Broker (CA)